UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-61879-CIV-RUIZ/STRAUSS

RONALD WILSON,

      Petitioner,

v.

MARK S. INCH,
*Secretary, Florida Department of Corrections*,

      Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

THIS CAUSE is before me on Ronald Wilson's ("Petitioner's") Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (DE 1) and Memorandum of Law in Support of Petition Filed Under 28 U.S.C. § 2254 (DE 3) (collectively, the "Petition"). Specifically, Petitioner challenges his conviction and sentence for one count of delivery of cocaine on grounds of ineffective assistance of trial counsel. (DE 1; DE 3). This matter has been referred to me to take all action as required by law pursuant to 28 U.S.C. § 636(b) and the Magistrate Rules of the Local Rules of the United States District Court for the Southern District of Florida. (DE 11). I have carefully reviewed the Petition, the Response (DE 8), and the record (DE 9; DE 10). Being otherwise duly informed, for the reasons further described below, I respectfully **RECOMMEND** that the Petition be **DENIED.**

1

I.      **BACKGROUND**

Petitioner reported being incarcerated at Charlotte Correctional Institution in Punta Gorda, Florida[1] when he filed his Motion on July 25, 2019.  (DE 1; DE 3).  According to the summary of facts in Petitioner's memorandum of law, on November 14, 2014, at approximately 10:00 a.m., he was standing in the street with several people when an undercover police officer pulled up in an unmarked vehicle.  (DE 1 at 7; DE 3 at 2).  Petitioner walked up to the vehicle and asked the officer "what he wanted."  (DE 3 at 2).  The officer asked in slang to purchase $40 of rock cocaine.  (DE 1 at 7; DE 3 at 2).  "Petitioner then repeated 40, pointed to someone else and told [the officer] to park . . . down the street."  (DE 3 at 2).  After parking, the officer observed Petitioner make contact (without exchange of anything) with another person (the "Co-Defendant"), who moved out of sight and then reappeared to approach the officer's vehicle and show the officer rocks of crack cocaine. *Id.*  The officer completed the purchase of the crack cocaine, in exchange for $40, with Co-Defendant.  *Id.* at 3.  Approximately four hours later, law enforcement arrested Petitioner and Co-Defendant.  *Id.*  The State presented no evidence at trial that Petitioner possessed drugs or currency upon arrest.  *Id.*

On March 10, 2015, Petitioner was charged via information with one count of delivery of cocaine.  (DE 9-1 at 8-9).  Following a jury trial, on November 25, 2015, Petitioner was convicted on the sole count of delivery of cocaine and sentenced to ten (10) years of imprisonment.  (DE 1 at 1; DE 8 at 2; DE 10-1 at 361, 363; DE 10-2 at 5-6).

On November 30, 2015, Petitioner appealed the final orders imposing judgment and sentence to the Fourth District Court of Appeal ("Fourth DCA"), Case No. 4D15-4595.  (DE 1 at

---

[1] The Response reports that Petitioner is incarcerated at a correctional facility in Okeechobee County.  (DE 8 at 1).

3; DE 8 at 2; DE 9-1 at 26, 28-29, 31).  On November 10, 2016, the Fourth DCA affirmed per curiam the conviction and sentence.  (DE 9-1 at 88).  The Fourth DCA issued its Mandate on December 2, 2016.  (DE 9-1 at 90).

Pursuant to Florida Rule of Criminal Procedure 3.850, Petitioner filed a motion for postconviction relief on January 11, 2018.  (DE 9-1 at 92-110).  Petitioner's motion raised five grounds for relief based upon ineffective assistance of trial counsel alleging that counsel: (1) failed to adequately represent him during the plea process; (2) interfered with his right to testify; (3) failed to file a motion to recuse the trial judge; (4) failed to investigate and call a witness; and (5) failed to present any mitigating evidence at sentencing.  (DE 9-1 at 92-110).  The State filed a response, and, on October 1, 2018, the trial court denied the motion finding that each of the grounds for relief could be "conclusively resolved as a matter of law . . . by reliance on the record."  (DE 9-1 at 112-137).  On, October 15, 2018, Petitioner's motion for a rehearing was denied.  (DE 9-1 at 147-48).

On November 13, 2018, Petitioner appealed the order denying postconviction relief to the Fourth DCA, Case No. 4D18-3445.  (DE 9-1 at 150-91).  The State responded after the Fourth DCA issued an Order to Show Cause, following which the Fourth DCA affirmed per curiam, on April 4, 2019, the order denying postconviction relief.  (DE 9-1 at 193-209).  On April 19, 2019, Petitioner requested a rehearing and a written opinion, which the Fourth DCA denied on June 5, 2019.  (DE 9-1 at 211-220).  The Fourth DCA issued its Mandate on June 28, 2019.  (DE 9-1 at 222).

Petitioner now raises four grounds for relief due to ineffective assistance of counsel by alleging that: (1) counsel failed to adequately represent the Petitioner during the plea process; (2) counsel interfered with Petitioner's right to testify; (3) counsel failed to move to recuse the trial

court judge; and (4) counsel failed to investigate and call a witness that would have assisted in proving the Petitioner's innocence.  (DE 1; DE 3).

## II.    PRELIMINARY MATTERS

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  "AEDPA requires that a state prisoner seeking habeas relief under Section 2254 must bring his federal petition within a year from the date that his state conviction becomes 'final,' either by the conclusion of his direct review or the expiration of time to seek such review." *Jones v. Sec'y, Fla. Dep't of Corr.*, 906 F.3d 1339, 1342 (11th Cir. 2018) (citing 28 U.S.C. § 2244(d)(1)(A); *Carey v. Saffold*, 536 U.S. 214, 216 (2002)).  "This one-year statute of limitations will be tolled, however, for '[t]he time during which a properly filed application for State post-conviction or other collateral review' is pending in the state court." *Id.* (quoting 28 U.S.C. § 2244(d)(2)).

In addition, "the habeas statute requires applicants to exhaust all available state law remedies." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007) (citing 28 U.S.C. § 2254(b)(1)(A)).  AEDPA's limitation period and tolling provision, along with the habeas statute's exhaustion requirement work together to "encourage litigants first to exhaust all state remedies and then to file their federal habeas petitions as soon as possible." *Lawrence v. Fla.*, 549 U.S. 327, 332–33 (2007) (citations and internal quotation marks omitted).  Thus, before proceeding to analyze Petitioner's claims on the merits, I address the issues of timeliness and exhaustion.

### A.  Timeliness

As to the timeliness of the Petition, Respondent states, without waiver of any defenses, that the Petition appears to be timely filed.  (DE 8 at 5).  I agree that the Petition is timely filed for the

reasons set forth below.  The time limits for filing an application for habeas relief from a state

conviction are set forth in 28 U.S.C. § 2244(d), which provides as follows:

> **(1)** A 1-year period of limitation shall apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court. The
> limitation period shall run from the latest of—
>
> > **(A)** the date on which the judgment became final by the conclusion of direct
> > review or the expiration of the time for seeking such review;
> >
> > **(B)** the date on which the impediment to filing an application created by State
> > action in violation of the Constitution or laws of the United States is
> > removed, if the applicant was prevented from filing by such State action;
> >
> > **(C)** the date on which the constitutional right asserted was initially recognized
> > by the Supreme Court, if the right has been newly recognized by the
> > Supreme Court and made retroactively applicable to cases on collateral
> > review; or
> >
> > **(D)** the date on which the factual predicate of the claim or claims presented
> > could have been discovered through the exercise of due diligence.
>
> **(2)** The time during which a properly filed application for State post-conviction or
> other collateral review with respect to the pertinent judgment or claim is
> pending shall not be counted toward any period of limitation under this
> subsection.

28 U.S.C. § 2244(d).  Thus, "AEDPA's statute of limitations begins to run when the judgment

pursuant to which the petitioner is in custody, which is based on both the conviction and the

sentence the petitioner is serving, is final." *Vaughan v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x

554, 555 (11th Cir. 2019) (per curiam) (quoting *Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1285,

1293 (11th Cir. 2007)).  Tolling applies, however, during the time in which "a properly filed

application for State post-conviction or other collateral review" of the judgement is pending.  28

U.S.C. § 2244(d)(2).

Here, the Fourth DCA per curiam affirmed Petitioner's judgment and sentence on

November 10, 2016.  (DE 9-1 at 88).  The Florida Supreme Court has held that it lacks jurisdiction

over per curiam decisions of Florida's District Courts of Appeal when such decisions are issued without explanation. *Jackson v. State*, 926 So. 2d 1262, 1266 (Fla. 2006).  Further, "direct review cannot conclude for purposes of § 2244(d)(1)(A) until the availability of direct appeal to the state courts and to [the United States Supreme Court] has been exhausted."  *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009).  Therefore, because the Fourth DCA's affirmation of judgment and sentence was not further appealable in the state courts, Petitioner's conviction became final on February 8, 2017, after the 90-day period ended for filing a certiorari petition seeking discretionary review in the United States Supreme Court.  *Nix v. Sec'y for Dep't of Corr.*, 393 F.3d 1235, 1236–37 (11th Cir. 2004) (finding a petitioner's conviction final "90 days after the state appeals court affirmed his judgment, i.e., the last day upon which [the petitioner] could file a certiorari petition with the U.S. Supreme Court").

Petitioner then filed a Rule 3.850 motion for postconviction relief on January 11, 2018. (DE 9-1 at 92-110).  A total of 337 days of untolled time elapsed from the date that Petitioner's judgment and sentence became final on February 8, 2017, until he filed his postconviction motion to start the tolling of the one-year limitations period.  The one-year limitations period remained tolled from January 11, 2018, until June 28, 2019, when the Fourth DCA issued its Mandate affirming denial of the postconviction motion.  (DE 9-1 at 222).  *See Nix*, 393 F.3d at 1237 (stating that "[t]he one-year limitations period . . . is tolled while an 'application for State post-conviction or other collateral review' is pending" (quoting 28 U.S.C. § 2244(d)(2))).

An additional 27 days of untolled time elapsed between the time the Fourth DCA issued its Mandate on June 28, 2019 and July 25, 2019, when Petitioner filed the instant Petition.  Adding the 27 days to the prior calculation of 337 days of untolled time brings the total untolled time to

364 days.  Therefore, Petitioner filed his Petition within the one-year period allowed by statute.

Accordingly, I find that the Petition is timely filed.

### B. **Exhaustion**

 "Before bringing a habeas action in federal court, [a] petitioner must exhaust all state court

remedies that are available for challenging his conviction."  *Nieves v. Sec'y, Fla. Dep't of Corr.*,

770 F. App'x 520 (11th Cir. 2019) (citing 28 U.S.C. § 2254(b), (c)).  "A failure to exhaust occurs

. . . when a petitioner has not fairly presented every issue raised in his federal petition to the state's

highest court, either on direct appeal or on collateral review."  *Pope v. Sec'y for Dep't of Corr.*,

680 F.3d 1271, 1284 (11th Cir. 2012) (citation and internal quotation marks omitted).  "'In Florida,

exhaustion usually requires not only the filing of a [Fla. R. Crim. P.] 3.850 motion, but an appeal

from its denial.'"  *Nieves*, 770 F. App'x at 521 (quoting *Leonard v. Wainwright*, 601 F.2d 807,

808 (5th Cir. 1979)).

Here, Petitioner brings four (out of five) of the same claims that he brought in a Rule 3.850

motion for postconviction relief, the denial of which by the trial court he appealed to the Fourth

DCA.  The Fourth DCA affirmed.  (DE 9-1 at 222).  Respondent does not allege that Petitioner

seeks relief for unexhausted claims.[2]  Accordingly, I conclude that Petitioner exhausted his claims.

---

[2] Although the State does not argue, and I do not find, that Petitioner failed to exhaust any of his claims, the Petition does include some specific, significant allegations within one of the claims that Petitioner failed to present to the state postconviction court.  With respect to Claim 1, Petitioner alleges now, *inter alia*, that: (1) "[t]rial counsel failed to explain the Petitioner's charges to him, prior to allowing him to reject a favorable plea offer"; and (2) that trial counsel did not "advise him about the strengths and weaknesses of the case against him."  (DE 3 at 13).  Petitioner did not make these specific allegations, however, in his postconviction motion.  The State argued in its response to Petitioner's motion for state postconviction relief that: "Defendant does not assert that trial counsel misadvised Defendant regarding the applicable law nor does he assert that trial counsel failed to discuss the strengths and weaknesses of the State's case."  (DE 9-1 at 116).  As explained *infra*, following the State's argument to the postconviction court that Petitioner's allegations were insufficient, Petitioner made explicit allegations on appeal, but the appellate court rejected them by affirming the postconviction court's decision per curiam without explanation.

III.   **LEGAL STANDARDS**

A.   **Standard Under the Antiterrorism and Effective Death Penalty Act**

As amended by AEDPA, title 28 U.S.C. § 2254(a) permits a federal court to issue "a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" if that custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A deferential standard applies, however, to federal courts' review of petitions for habeas relief due to "the State's interest in the finality of convictions that have survived direct review within the state court system" and based upon principles of "comity and federalism." *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993) (citations omitted) ("Federal intrusions into state criminal trials frustrate both the States' sovereign power . . . and their good faith attempts to honor constitutional rights.").

Indeed, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Burt v. Titlow*, 571 U.S. 12, 19 (2013).  Relevant limitations on habeas relief are set forth in § 2254(d), which states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d).  A federal habeas court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Furthermore, a state court may "adjudicate on the merits" without issuing a formal opinion

or outlining its reasoning. *Harrington*, 562 U.S. at 99. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* Furthermore, when a state court does not include any reasons for the denial of a collateral attack, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

The "contrary to" prong of § 2254(d)(1) means that a state court decision "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite] result." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (O'Connor, J., Opinion). In other words, "the state court's decision must be substantially different from the relevant [Supreme Court] precedent." *Id.*

The "unreasonable application" prong of § 2254(d)(1) finds that a state-court decision involves an unreasonable application of Supreme Court precedent if: (1) "the state court identifies the correct governing legal rule from [Supreme] Court[ ] cases but unreasonably applies it to the facts of the particular state prisoner's case"; or, (2) "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. "The focus of the . . . inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "[A] federal habeas court may not issue

the writ simply because [the] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529, U.S. at 411. Error correction is the function of state-level appeals; whereas "federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice system." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (citation and internal quotation marks omitted). Thus, "[i]n order to satisfy [the 'unreasonable application' prong's] high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (citation and internal quotation marks omitted).

An alternative avenue for habeas relief is provided in § 2254(d)(2), which applies when the state court's determination of the facts was unreasonable "in light of the evidence presented in the State court proceeding." 28 U.S.C.(d)(2). "'[A] determination of a factual issue made by a State court shall be presumed to be correct,' and the prisoner bears 'the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Jenkins v. Comm'r, Alabama Dep't of Corr.*, 963 F.3d 1248, 1264 (11th Cir. 2020) (quoting 28 U.S.C. § 2254(e)(1)); *but see Burt v. Titlow*, 571 U.S. 12, 18 (2013) ("We have not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)).").

As with § 2254(d)(1), a federal habeas court "accord[s] the state trial court substantial deference [for claims brought under § 2254(d)(2)]." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). Therefore, "the 'unreasonable determination of the facts' prong does not permit habeas relief 'merely because [the habeas court] would have reached a different conclusion in the first instance' or if 'reasonable minds reviewing the record might disagree about the finding in question.'" *Smith v. Sec'y, Dep't of Corr.*, 800 F. App'x 776, 779–80 (11th Cir. 2020) (quoting *Brumfield*, 576 U.S.

at 313-14 (cleaned up)).  For a federal court to grant relief under § 2254(d)(2), just like with § 2254(d)(1), "the state court's [factual] determination must be 'objectively unreasonable.'" *Landers*, 776 F.3d at 1294 (citing *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).  Objectively unreasonable means more than "merely wrong; even clear error will not suffice."  *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016), *cert. den'd*, 137 S. Ct. 2298 (2017) (citations and internal quotation marks omitted).  Therefore, if the state postconviction court did make a fact error, its decision should still be affirmed if there is some alternative basis sufficient to support it. *See Pineda v. Warden*, 802 F.3d 1198 (11th Cir. 2015).

In sum, "AEDPA's requirements reflect a presumption that state courts know and follow the law."  *Woods*, 575 U.S. at 316 (citation and internal quotation marks omitted).  Therefore, "[w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  *Id.*  Indeed, section 2254(d)'s "highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt.'"  *Cullen*, 563 U.S. at 181.  "This is especially true for claims of ineffective assistance of counsel . . . in order to afford both the state and the defense attorney the benefit of the doubt."  *Woods*, 575 U.S. at 316-17.

### B.  Ineffective Assistance of Counsel

While AEDPA's substantial deference applies to all issues raised in the instant Petition, an additional layer of deference applies to claims of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668.  *Cullen*, 563 U.S. at 190 (citing *Strickland* and stating that "review [here] is . . . doubly deferential[, requiring] a highly deferential look at counsel's performance through [§ 2254(d)'s] deferential lens") (citations and internal quotation marks omitted).  The

11

Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *Strickland*, 466 U.S. at 684-85. "[D]efendants in state court prosecutions have such right under the Fourteenth Amendment." *Minton v. Sec'y Dep't of Corrs.*, 271 F. App'x 916, 917 (11th Cir. 2008).  The Constitution, however, "does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt*, 571 U.S. 12, 24 (2013).  When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate: (1) that his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness; and (2) that he suffered prejudice as a result of that deficient performance. *Id.* at 687-88.  To establish deficient performance, a petitioner must show that, "in light of all the circumstances, [counsel's performance was] outside the wide range of professionally competent assistance." *Id.* at 690.  *See also Cummings v. Sec'y for Dep't of Corrs.*, 588 F.3d 1331, 1356 (11th Cir. 2009) ("To establish deficient performance, a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place.")  A court's review of performance should focus "not [on] what is possible or what is prudent or appropriate, but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*), *cert. den'd*, 531 U.S. 1204 (2001) (citation and internal quotation marks omitted).  There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical decisions. *Id.* at 1317.  "Thus,

no absolute duty exists to investigate particular facts or a certain line of defense." *Id.*  The test for ineffectiveness is not whether counsel could have done more nor whether the best criminal defense attorneys might have done more.  *Id.* at 1316.  Instead, to overcome the presumption that assistance was adequate, "a petitioner must 'establish that no competent counsel would have taken the action that his counsel did take.'"  *Hittson v. GDCP Warden*, 759 F.3d 1210, 1263 (11th Cir. 2014) (quoting *Chandler*, 218 F.3d at 1315).

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs.  *Id.* at 697.  Further, counsel is not ineffective for failing to raise non-meritorious issues.  *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001).  Counsel is also not required to present every non-frivolous argument.  *Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

"[U]nder th[e] doubly deferential standard [applicable to ineffective assistance of counsel claims], the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."  *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1126 (11th Cir. 2012) (citation and internal quotation marks omitted).  "[I]f, at a minimum, fairminded jurists could disagree about the correctness of the state court's decision, the state court's application of *Strickland* was not unreasonable and[, Section 2254(d)] precludes the grant of habeas relief."  *Id.* (internal citation omitted); *but see Evans v. Sec'y, Dep't of Corrs.*, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (*en banc*) (Jordan, J., concurring) (explaining that double deference to a state court's adjudication of

13

a *Strickland* claim applies only to *Strickland*'s performance prong, not to the prejudice inquiry). This "[d]ouble deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Johnson v. Sec'y, D.O.C.*, 643 F.3d 907, 911 (11th Cir. 2011).

### IV.   DISCUSSION

#### A.  Claims

Petitioner's claims for relief raise the following issues:

Claim 1: Whether counsel was ineffective by not advising Petitioner about the principal theory of criminal liability prior to Petitioner rejecting a favorable plea offer of thirty-three (33) months;

Claim 2: Whether counsel was ineffective in advising Petitioner regarding his right to testify;

Claim 3: Whether counsel was ineffective by failing to move to recuse the trial court judge; and

Claim 4: Whether counsel was ineffective by failing to investigate and call a witness that would have assisted in proving the Petitioner's innocence.

Petitioner has not carried his burden to demonstrate that he is entitled to relief on these claims for the reasons set forth below.

#### 1.  Claim 1

In Claim 1, Petitioner alleges that trial counsel provided ineffective assistance in advising him regarding a plea offer.  Specifically, Petitioner alleges that trial counsel failed to advise him that, if he proceeded to trial, he ran the risk of being found guilty at trial as a "principal."  (DE 1 at 5; DE 3 at 11-12).  Petitioner avers that he did not believe he could be found guilty based on the fact that he did not personally deliver the cocaine.  *Id.*  Petitioner contends that his counsel failed to go over the charges with him and discuss the elements that the State was required to prove and

how the evidence could establish those elements or not.  (DE 3 at 12).  Consequently, Petitioner rejected the State's offer of a sentence of thirty-three (33) months, which was at the bottom of the guidelines per Petitioner's scoresheet, subjecting him to a much longer sentence after conviction at trial.  *Id*. at 11-12. According to Petitioner, he was unaware of the State's "principal theory" for prosecuting him until the State explained it during *voir dire* the first day of the trial, which could only be because counsel never advised him.  *Id.* at 12. On this basis, Petitioner argues that his trial counsel was ineffective and requests that this Court direct the trial court to enter a new judgment, reflecting a sentence of thirty-three months, which will result in Petitioner's immediate release for time-served; or, in the alternative, Petitioner requests that this Court hold an evidentiary hearing. *Id.* at 15.

Respondent argues that the Fourth DCA's affirmation of the trial court's denial of Claim 1 was correct for several reasons.  (DE 8 at 10-13).  First, Respondent argues that Petitioner's claim is based on his subjective belief about the State's ability to convict him, which is not credible based on the record. *Id.* at 10-11.  Specifically, Respondent argues that the record shows that Petitioner's probable cause affidavit labeled his offense as "delivery of cocaine" and reported that he "brokered a narcotics deal."  *Id.* at 10 (citing DE 9-1 at 6).  Thus, Respondent argues that Defendant knew, from November 2014 until October 2015, the exact manner in which the State was alleging he committed the offense and that it was not by personally delivering the cocaine.  *Id.*  Second, Respondent asserts that trial counsel cannot be deficient for not correcting Petitioner's beliefs when there was no evidence that counsel was aware of the beliefs.  *Id.* at 11.  Third, Petitioner cannot establish prejudice because a mere allegation that a defendant would have pled guilty is insufficient to warrant relief, and here Petitioner failed to even allege that he would have accepted the plea offer, let alone offer objective evidence that he would have accepted the offer.  *Id.* at 12

(citing *Cook v. United States*, 180 F. App'x 927, 932 (11th Cir. 2006); *Hutchings v. U.S.*, 618 F.3d 693, 697 (7th Cir. 2010); *U.S. v. Farley*, 72 F.3d 158, 165 (D.C. Cir. 1995)).

Claim 1 is without merit based on the record. The postconviction court denied the claim because Petitioner acknowledged that counsel advised him of the plea offer of 33 months in prison. (DE 9-1 at 131-32). The court further adopted the State's reasoning, which attacked Petitioner's credibility in stating that he did not understand being tried as a principal and further asserted that Petitioner had not alleged that trial counsel misadvised him regarding the applicable law or failed to discuss the strengths and weaknesses of the State's case. (DE 9-1 at 115-16, 132).

Petitioner's Motion for Post Conviction Relief alleged that trial counsel failed to fully advise him regarding whether to enter a plea or proceed to trial but acknowledged that the State offered a sentence of 33 months. *Id.* at 98. Petitioner's allegations and complaint about counsel centered on not understanding "what it meant to be tried as a principal," as follows:

> [W]hen trial counsel presented this offer . . . he failed to explain what the consequences of rejecting the offer would mean. Specifically, trial counsel failed to go over and explain what it meant to be tried as a "principal." The [Petitioner] was proceeding to trial with the understanding that because he did not personally deliver the cocaine to the detective, he could not be found guilty. It was not until he was sitting in voir dire, and heard the State make the argument about being the get-away driver in a bank robbery that he understood what the principal theory meant. Trial counsel's failure to explain this to the Movant, prior to allowing him to reject a favorable plea offer, was deficient performance on trial counsel's part because this information was directly relevant to the Movant's choice in either accepting or rejecting an offer.

*Id.* at 98-99.

In denying the claim, the postconviction court stated that:

> [I]n order to establish a viable claim of ineffective assistance of counsel based on misadvice when rejecting a State offer[,] the Defendant must plead that counsel failed to communicate the plea offer or failed to inform the Defendant of the possible penalties involved, that the Defendant would have otherwise accepted the State's offer, that the State would not have withdrawn the offer, that the Court

would have accepted the plea negotiations and that the plea would have resulted in a lesser sentence for the Defendant.

*Id.* at 132.  The postconviction court further adopted the State's reasoning (*id.*), which asserted that Petitioner had failed to establish the first element of the claim (as the postconviction court's opinion set forth above) because Petitioner acknowledged full awareness of the plea offer.  *Id.* at 115 (citing *Alcorn v. State*, 121 So. 3d 419 (Fla. 2013) (relying on *Missouri v. Frye*, 566 U.S. 134, 146 (2012) (stating that counsel is deficient when failing to communicate plea offer) and *Lafler v. Cooper*, 566 U.S. 156, 173 (2012) (requiring that a defendant must demonstrate prejudice even where counsel's performance is deficient) and holding that establishing prejudice under *Strickland* requires a defendant to show that (1) he would have otherwise accepted the offer, (2) the State would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the terms of the offer would have been less severe than the judgment and sentence imposed)).

I disagree that deficient performance comprises only a failure to communicate a plea offer or possible penalties but nevertheless find that the state court did not unreasonably apply *Strickland* to deny Petitioner's claim.  Effectively communicating a plea offer involves providing the legal counsel necessary for a defendant to meaningfully evaluate that plea offer.  *See Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (holding that a defendant must make an informed decision regarding a plea offer and citing *Strickland*, 466 U.S. at 688 and *Johnson v. Duckworth*, 793 F.2d 898, 902 (7th Cir.), *cert. denied*, 479 U.S. 937 (1986)).  Indeed, a defendant is entitled to rely upon his counsel to examine facts, circumstances, pleadings and laws involved and to then offer an informed opinion as to the plea that should be entered.  *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948).  Counsel's performance during the plea process is deficient if counsel commits a serious dereliction of duty in advising a defendant.  *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991).  Absent this type of error, however, a federal habeas court should presume that

17

counsel's performance was adequate.  *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Lancaster v. Newsome*, 880 F.2d 362,375 (11 Cir. 1989) as emphasizing that a petitioner is not guaranteed "error-free" representation).

Here, I do not find unreasonable the postconviction court's determination that Petitioner lacked credibility in stating that he did not understand what it meant to be tried as a principal or did not understand that he could be found guilty despite not personally delivering cocaine.  The state court adopted the State's reasoning, and the State found "remarkable" Petitioner's assertion that he did not understand the proof necessary to establish "delivery of cocaine" based upon Petitioner's prior conviction for *conspiracy to deliver cocaine*.  *Id.* at 116 (emphasis in original). In other words, Petitioner would have been aware that he could face charges for having been involved in the delivery of cocaine, even if he did not himself deliver cocaine.  Further, as the State points out in its Response, the Complaint clearly lays out the charge against the Petitioner.  (DE 8 at 10; DE 9-1 at 6).  The Complaint states the offense as one count of delivery of cocaine, and the probable cause affidavit contained therein specifically states that Petitioner "brokered a narcotics deal" by advising the undercover officer where to park and "directing his co-defendant to serve him."  (DE 9-1 at 6).  Thus, the state court could reasonably have rejected Petitioner's claim that he did not understand how he could be found guilty of delivering cocaine when, in fact, he was not the one delivering it.

Furthermore, the record supports the State's argument to the state postconviction court that counsel's performance was not deficient during the plea process because counsel failed to correct Petitioner's misunderstanding that he could not be found guilty for delivery of cocaine because he did not deliver it.  (DE 9-1 at 116).  Petitioner had nearly a year from his arrest in November of 2014 until his trial in October 2015 to question the charge, and nothing in the record indicates that

he questioned his trial counsel about how he could be charged with delivery of cocaine without having personally delivered it.  Nor is there any evidence that counsel knew that Petitioner did not understand how the State would proceed against him.  Counsel's failure to disabuse Petitioner of his subjective belief that he could not be charged as a principal (for delivery) was not unreasonable when counsel did not realize that Petitioner held this belief.   Therefore, Petitioner has not established that the state court's application of the *Strickland* standard in denying him relief was unreasonable.

Petitioner's allegation that his counsel failed "to go over the charges with him and discuss the elements that the State was required to prove and how the evidence could establish those elements or not," standing alone could alter the evaluation of whether counsel simply failed to correct Petitioner's (unstated) misunderstanding about principal liability or more starkly failed to provide the basic legal counsel necessary for Petitioner to meaningfully evaluate the plea offer.  However, Petitioner did not allege these facts to the state postconviction court, which court provided the last reasoned decision to which we look because the Fourth DCA affirmed it per curiam without explanation. *Wilson*, 138 S. Ct. 1188, 1192 (2018).

Rather, following the State arguing that Petitioner's allegations to the postconviction court were insufficient, Petitioner then made the allegations upon appeal from the state postconviction court's denial.  Specifically, Petitioner argued upon appeal that:

> The trial court's sole basis for denying this claim was its reliance on the State's response, which argued that the Appellant was not entitled to relief because he did "not assert that trial counsel misadvised him regarding the applicable law nor does he assert that trial counsel failed to discuss the strengths and weaknesses of the State's case."  However, as articulated above,[3] that is exactly what the Appellant

---

[3] Petitioner argued earlier in his appellate brief that Claim 1 was not facially insufficient because it was pled with appropriate detail—that counsel was ineffective when he "failed to explain what the consequences of rejecting the [plea] offer would mean.  Specifically, trial counsel failed to go over and explain what it meant to be tried as a 'principal.'  The Movant was proceeding to trial

argued.   Trial counsel's misadvice and failure to go over the strengths and
weaknesses of the State's case is what caused the Appellant's misunderstanding of
the law.  Thus, this Court should find that the trial court seriously erred.

(DE 9-1 at 178).  The allegations made to, and rejected by, the state appellate court that are

reasserted in the Petition relate specifically to Petitioner's incorrect belief that he could not be

found guilty of delivering cocaine when he did not, in fact, deliver it.  The state court rejected

Petitioner's argument in this regard for the reasons set forth above, and the appellate court adopted

the state court's reasoning.  Petitioner did not argue in state court that his counsel failed to discuss

*at all* the charges or the strengths and weaknesses of the case.  Rather, Petitioner's complaint about

counsel's performance is directly tied to not understanding how he could be charged with

delivering cocaine when he did not deliver it—the principal theory of liability.  As detailed above,

the state postconviction court rejected Petitioner's allegation that he did not understand the charges

against him.  In addition, as previously discussed, Petitioner failed to establish that the state trial

court unreasonably applied *Strickland* to deny Claim 1.  Thus, Petitioner's instant allegations --

that counsel failed to go over the charges, discuss the elements needing to be proved and how the

evidence could establish those elements, which are grounded in Petitioner' alleged lack of

understanding and misbelief that he could not be found guilty – likewise fail to establish that the

state court unreasonably applied the *Strickland* standard to deny Petitioner's claim.

Although the claim fails for lack of establishing trial counsel's deficient performance alone,

the claim also fails to demonstrate prejudice, as the State correctly argues.  (DE 8 at 12).  "To show

prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected

because of counsel's deficient performance, defendants must demonstrate a reasonable probability

---

with the understanding that because he did not personally deliver the cocaine to the detective, he
could not be found guilty."  (DE 9-1 at 176).

they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147, 132 S.Ct. 1399.  Indeed, when a defendant is aware of a plea offer, a self-serving statement after the fact that he desired to plead guilty, without more, is insufficient to establish that he would have accepted a plea offer but for his counsel's misadvice. *Diaz*, 930 F.2d 832, 835 (11th Cir. 1991) (finding that the district court could have concluded that appellant "did not establish a reasonably probability that, absent counsel's alleged ineffective assistance, he would have accepted the plea agreement").

Here, there is no evidence at all that Petitioner wanted to plead guilty or considered pleading guilty.  There is evidence, however, that Petitioner wanted to go to trial.  "The best way to evaluate whether there is a reasonable probability a petitioner would have insisted on going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial." *Singleton v. Sec'y of Dept. Of Corr.*, 2009 WL 975783, *4 (M.D. Fla. 2009); *see also Hill v. Lockhart*, 474 U.S. 52, 59, (1985). (The prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.").

Here, Petitioner's trial counsel first argued in a motion for a judgment of acquittal that the State had failed to make out a prima facie case against him.  (DE 10-1 at 285:10-286:12).  Counsel also argued to the jury that the police had "just jumped to the worst conclusions possible . . . because [Petitioner] made two statements[: w]hat do you want, and number two, go over there." (DE 10-1 at 316:12-17).  In particular, counsel argued that nobody heard the conversation between Co-Defendant and Petitioner, that the State presented no proof that Petitioner benefited in any way from the sale of the cocaine at issue, and that Petitioner simply "got caught up in the middle of something that he had no business being in because he was hanging out at the wrong time [at] the wrong place." *Id.* at 316:18-325:18.

Moreover, in between trial counsel's motion for a judgment of acquittal and closing arguments to the jury, the trial court asked Petitioner if he was satisfied with his counsel, and Petitioner confirmed that he thought counsel was doing a good job.  (DE 286:25-287:5).  Thus, the record indicates that Petitioner had a defense that he and his counsel reasonably believed would be fruitful at trial, and Petitioner chose to go to trial rather than accept the State's plea offer.

Petitioner's arguments on Claim 2 (below) further undermine his contention that he would have accepted the State's plea offer.  Petitioner asserts that he told his counsel that he wanted to testify because he was innocent of the charge.  (DE 3 at 16).  If Petitioner's assertions in Claim 2 are to be believed, this abiding belief that he could prove his own innocence must have persisted during trial, even after Petitioner was supposedly disabused of his misunderstanding of principal liability.  Yet such an abiding belief runs counter to the notion that he would nonetheless have accepted the State's plea offer and conceded guilt but for his counsel's alleged errors.

Claim 1 establishes neither deficient performance nor prejudice based upon the record. Thus, the state court did not unreasonably apply *Strickland* to determine that Petitioner failed to state a viable claim for ineffective assistance of counsel.  Accordingly, Claim 1 provides no grounds for relief.

## 2.  Claim 2

Petitioner argues in Claim 2 that relief is warranted because his trial counsel misadvised him regarding his right to testify.  (DE 1 at 6-7; DE 3 at 15).  Specifically, Petitioner alleges that he told his counsel that he wanted to testify because he was innocent of the charge.  (DE 3 at 16). Petitioner alleges that trial counsel advised him that "it would not be a good idea because of his prior record . . . [reflecting that Petitioner] had been to federal prison on a conspiracy charge that involved controlled substances."  *Id.*  Petitioner argues that trial counsel, by failing to inform the

Petitioner that the jury would only hear about the number of prior convictions, engaged in an omission that is deficient under *Strickland* because Petitioner did not testify as a result. *Id.* Petitioner also argues that trial counsel's omission regarding the legal standard caused prejudice "because the Petitioner was the only person who could explain to the jury that he had nothing to do with [Co-Defendant] providing drugs to the undercover officer." *Id.* at 17. Specifically, Petitioner alleges that he would have testified that "[he] advised [Co-Defendant] two or three times that he should not sell anything to the [undercover police officer] because [Petitioner] was suspicious of him" and that Co-Defendant independently "heard the officer ask for the drugs." *Id.* Thus, Petitioner contends that he "would have proven that he (1) did not have a conscious intent that the criminal act be done and (2) he did not do some act or say some word that was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually commit the crime." *Id.* Therefore, Petitioner asks this Court to vacate the judgment or, alternatively, that this Court conduct an evidentiary hearing so that Petitioner may prove he is entitled to relief. *Id.* at 18.

Respondent argues that Petitioner was fully aware of his right to testify as demonstrated during the court's colloquy with Petitioner during the trial and that counsel advising him not to testify was a reasonable trial strategy and, therefore, not deficient. (DE 8 at 14-15). Specifically, Respondent argues that Petitioner's "criminal history militated against the jury finding him credible," and, by not testifying, counsel was able to benefit from Petitioner's credibility remaining intact to argue that he did not direct Co-Defendant to sell drugs to the undercover police officer. *Id.* at 15. Respondent also argues that, even if counsel was deficient, Petitioner fails to establish prejudice because his assertion that the outcome of the trial would have been different if he testified is speculative. *Id.* Respondent argues that the testimony Petitioner asserts he would have proffered

is inadmissible hearsay and that alleging he found the uncover officer suspicious could have opened the door to the substance of his prior convictions. *Id.* at 16-17.

Claim 2 does not merit relief for the following reasons. During the trial, the court specifically questioned Petitioner about testifying, and Petitioner confirmed his understanding of his right to testify, confirmed his understanding that it was his decision whether to testify, and stated explicitly, "I don't wish to take the stand." (DE 10-1 at 287:6- 289:12). Further, trial counsel's advice to Petitioner to not take the stand was reasonable because counsel was able to argue to the jury that Petitioner did not direct Co-Defendant to supply the drugs in question without Petitioner's prior conviction coming before the jury to attack Petitioner's credibility. (DE 10-1 at 316:12-325:18). Such advice is undoubtedly within "the wide range of professionally competent assistance." *See Strickland*, 466 U.S. at 690. Additionally, Respondent correctly argues that Petitioner fails to demonstrate prejudice because Petitioner's conclusory assertion that the outcome of the trial would have been different if he had testified is speculative.[4] Even assuming *arguendo* that counsel erred in advising him not to testify, Petitioner's presupposition, that the jury would have found him credible, is insufficient to establish a "reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. For these reasons, Claim 2 fails.

### 3.  Claim 3

---

[4] Indeed, it is at least as likely that Petitioner's proffered testimony would have backfired. Petitioner asserts that he would have testified that he "advised [Co-Defendant] two to three times that he should not sell anything to the individual because he was suspicious of him." (DE 3 at 17). The jury could easily have viewed such testimony as confirmation that Petitioner was aware of – and, indeed, involved in – Co-Defendant's distribution of drugs, while disbelieving Petitioner's self-serving statement that he advised against this particular transaction. Conjecturing this outcome is just as speculative as Petitioner asserting that the jury would have found him credible. But even the existence of this potential alternative result from Petitioner's proposed testimony underscores why it was reasonable for Petitioner's counsel to advise against testifying.

Claim 3 alleges that Petitioner's trial counsel was ineffective for failing to file a motion to disqualify the trial judge. Petitioner asserts that he had requested trial counsel to file such a motion but that counsel advised Petitioner that Petitioner's concern "wouldn't be an issue." (DE 1 at 8-9; DE 3 at 18-19). Petitioner's concern was that the trial judge, Judge Destry, had presided over a drug-related case involving Petitioner that had been pending for four years before Judge Destry had to dismiss it in 2013 because of an agreement. (DE 3 at 19). Petitioner alleges that he had a well-founded fear in the state court proceedings that he would not receive a fair and impartial trial before Judge Destry and established this fact in the record. *Id.* Thus, Petitioner claims he is entitled to relief because he was prejudiced by trial counsel's failure to file a motion to recuse Judge Destry and because he did not receive a fair trial due to Judge Destry presiding over it. *Id.* at 20.

Respondent argues that the mere fact that the judge previously presided over a dismissed case does not per se render the judge biased. (DE 8 at 19). Further, Respondent argues that the postconviction court pointed out that it is commonplace for defendants to appear repeatedly before the same judge relative to both alleged violations of probation and new substantive cases. (DE 8 at 19; DE 9-1 at 133-34). Respondent also argues that Petitioner fails to establish a violation of "clearly established Federal law" because Petitioner cites no case, and Respondent finds no case, where the Supreme Court ruled that judicial recusal is warranted when a presiding judge has presided over a prior case of a defendant that the judge dismissed. (DE 8 at 20). Moreover, Respondent argues that, even if trial counsel should have moved to disqualify the judge, Petitioner fails to establish prejudice because his conclusory assertions that he was prejudiced and did not receive a fair and impartial trial are insufficient. *Id.*

Claim 3 fails for the reasons stated herein.  As Respondent correctly argues, Petitioner fails to establish a violation of clearly established federal law, counsel's deficient performance, or prejudice.  First, while Petitioner cites to various Supreme Court decisions establishing that due process requires a fair trial that is absent of judicial bias, Petitioner completely fails to demonstrate that any actual judicial bias existed in this case.  He points to nothing beyond his own pure speculation that Judge Destry harbored bias against him as a result of the previously dismissed case.  He makes no reference to any comment, action, or ruling of Judge Destry's that provided even the slightest confirmation of Petitioner's hypothesis.  Moreover, Petitioner fails to explain why a judge's dismissal of a previous case, because Petitioner made an agreement with the State to drop charges, should trigger an automatic finding of judicial bias requiring judicial recusal in a subsequent case.  Nor has Petitioner cited any case making such an automatic finding or determining that a fear of bias based on such facts is objectively reasonable.  Accordingly, I find that Petitioner has failed to carry his burden to establish that the postconviction court's decision, to deny him relief on the basis that his counsel refused to move for Judge Destry's recusal, satisfies the "contrary to" prong of § 2254(d)(1) in order to merit this Court granting relief.

Second, Petitioner fails to establish that counsel's performance was deficient.  The postconviction court, after commenting that defendants in the State's criminal felony trial division often appear repeatedly before the same judge, found that Petitioner's appearance before Judge Destry previously "[did] not provide legally sufficient grounds to move to recuse the Judge." (DE 9-1 at 133-34).  As explained above, Petitioner did not establish that the postconviction court's decision was contrary to clearly established federal law.  Indeed, Petitioner does not establish that his requested motion was likely to be meritorious and successful.  Therefore, as the postconviction

court found that Petitioner did not have legally sufficient grounds for judicial recusal, counsel could not be deficient for failing to move to recuse Judge Destry.

Third, Petitioner fails to satisfy *Strickland's* prejudice prong.  As the postconviction court found, Petitioner "merely assert[ing] that '[he] was substantially prejudiced because he did not receive a fair and impartial trial'" was, and remains, insufficient to establish prejudice.  *Id.* at 134. Again, Petitioner fails to cite to even a single action taken by Judge Destry as a manifestation of the Judge's alleged bias against him, much less any action that could actually demonstrate that this trial was unfair.  Rather, Petitioner repeats the same conclusory allegation in the instant Petition and offers no proof based upon the record that he was prejudiced.  Thus, Claim 3 is without merit.

### 4.  Claim 4

In Claim 4, Petitioner alleges that trial counsel was ineffective because he failed to investigate a witness, Mr. Jackson, who was standing with Petitioner during the events at issue, and would have testified that anyone who was standing as close as Co-Defendant to the undercover officer's vehicle when it pulled up could hear the officer's request for drugs.  (DE 1 at 10; DE 3 at 22).  Thus, Petitioner argues that Mr. Jackson's testimony would have shown that Co-Defendant acted independently from anything said by Petitioner and demonstrated reasonable doubt as to the State's principal theory.  (DE 3 at 22-23).  As a result of his counsel's failure to investigate and call Mr. Jackson as a witness, Petitioner contends that he was prejudiced and that his due process rights were denied.  *Id.* at 22 (citing authority holding that "the right to develop and present a theory of defense is a fundamental constitutional right").

Petitioner alleges that the postconviction court denying his claim referenced trial transcripts finding that trial counsel was assigned to Petitioner on May 15, 2015 and that jury selection began on October 19, 2015.  *Id.* at 23.  Petitioner further alleges that the State started its case at 10:30

a.m. on October 20, 2015, which provided time for his counsel to investigate the witness even given late disclosure of the witness.  *Id.* at 24.  On the day of jury selection, Petitioner told the court that his attorneys were just learning about Mr. Jackson because they had "never got[ten] in touch with the Petitioner."  *Id.* at 23.  The state postconviction court, according to Petitioner, used this conversation to deny the claim because the court found that Petitioner could have advised trial counsel about the witness earlier in the day.  *Id.*  Petitioner alleges that "there was nothing in the record that established the Petitioner had not advised trial counsel earlier that morning about the witness"; thus, Petitioner argues that the finding was based on an unreasonable determination of the facts in light of the evidence of record.  *Id.*  Petitioner further alleges that, even if the trial court's finding of facts is true, trial counsel still had over 24 hours to find Mr. Jackson but did not contrary to what any reasonable counsel would have done.  *Id.* at 24.  Thus, Petitioner argues that the trial court's finding that counsel's performance was not deficient was an unreasonable determination of the facts resulting in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the Supreme Court.  *Id.*  On this basis, Petitioner requests that this Court vacate the judgment or alternatively hold an evidentiary hearing so that Petitioner may prove his entitlement to relief.

Respondent argues that the record refutes Petitioner's claim that counsel was ineffective for failing to investigate and call Mr. Jackson as a witness.  Specifically, Respondent alleges that the record establishes that trial counsel only learned of Mr. Jackson moments before prospective jurors entered the courtroom for voir dire.  (DE 8 at 21).  Further Respondent refutes Petitioner's implication that he had no earlier opportunity to tell his counsel about Mr. Jackson by citing that Petitioner had been in court with counsel on prior occasions and was even in the courtroom with counsel on the day of jury selection prior to announcing that day to the trial court that he wanted

Mr. Jackson as a witness.  *Id.* at 21-22.  Respondent also argues that, despite the late disclosure of Mr. Jackson, the trial court allowed Petitioner to add Mr. Jackson to his witness list.  *Id.* at 22. But Mr. Jackson did not show up at trial, and Petitioner then told the court he was no longer interested in calling Mr. Jackson as a witness.  *Id.* at 22.  Respondent contends counsel's performance cannot be deficient for failing to investigate and call a witness of which counsel was unaware and who "voluntarily absented himself" from trial.  *Id.*  Additionally, as to prejudice, Respondent argues that Mr. Jackson's testimony would have been cumulative as to establishing the fact that the undercover officer spoke loud enough that the Co-Defendant and the others present could hear what he said.  *Id.* at 23.  Respondent asserts that the trial testimony established this fact.  *Id.*  Thus, Respondent argues that Petitioner cannot establish prejudice because there was no reasonable possibility that Mr. Jackson's testimony would have changed the outcome of the trial.  *Id.*

Claim 4 fails to provide grounds for relief because, as Respondent correctly argues, the record clearly refutes that Petitioner's counsel was ineffective for failing to investigate and call Mr. Jackson as a witness.   On the day of jury selection, October 19, 2015, Petitioner's counsel stated that they had no witnesses other than those listed by the state.  (DE 10-2 at 2:15-3:3).  Then Petitioner stated, in response to the trial court's inquiry, that he wanted Mr. Jackson to testify.  *Id.* at 3:10-4:10.  The court's inquiry continued as follows:

THE COURT: Let me ask Mr. Nones, Mr. Burke, when was the first time you heard from [sic] Mr. Terrell Jackson?  Your client is saying he has a witness by the name of Terrell Jackson he wants to testify.

MR. NONES:  Just now, Your Honor.

THE COURT: You never heard of him before that?

MR. NONES: No, Your Honor.

THE COURT: Mr. Burke, had you heard of him before?

MR. BURKE: No, Your Honor.

THE COURT: Okay.  Mr. Wilson, why is it that you're just now telling your lawyers about the existence of this person?

MR. WILSON: Well.  Because I never had a meeting with my lawyer.  My lawyers never got in touch with me, I never – this is what I get.  I never – the lawyers never got in touch with me, never did anything.  So this is my preparation for trial.

THE COURT: Okay.  You can have Mr. Jackson here tomorrow, first thing?

MR. WILSON: For sure.

Id. at 4:12-5:11.  Thus, Petitioner's allegation that "nothing in the record . . . established [that] the Petitioner had not advised trial counsel earlier that morning about the witness" is directly contradicted by his lawyers' statements on the record that they had not heard about Mr. Jackson previously.  It is further contradicted by Petitioner's own affirmation under oath explaining why he had not previously told his lawyers about Mr. Jackson.  As Respondent argues, it is not credible that Petitioner had no prior opportunity to tell his counsel about Mr. Jackson because Petitioner would have been in the courtroom with his counsel on several occasions before the trial.  (DE 8 at 22).  Further, as the record demonstrates and as the postconviction court found, the trial court was going to allow Mr. Jackson to testify over the State's objection despite the fact that he had not been listed in advance as a witness nor disclosed to Petitioner's counsel prior to trial.  (DE 9-1 at 134).

Mr. Jackson, however, failed to appear at the trial as evidenced by the following discourse:

THE COURT: Are you satisfied with Mr. Burke and Mr. Nones as your lawyers?

MR. WILSON: So far.

THE COURT: Do you think they are doing a good job for you?

MR. WILSON: Yes, I do.

THE COURT: Now, look, what they are telling me is that they do not intend to call any witnesses to testify in your case.  Now, yesterday, you mentioned, I think, it was Turrell Jackson?

MR. WILSON: Turrell Jackson.  He was a no show.

THE COURT: So, you are not interested in calling him as a witness at this point?

MR. WILSON: No.

*Id.* at 286:25-287:15.  Petitioner's motion for postconviction relief acknowledged that, under Florida law, Petitioner would need to show four things to sufficiently allege ineffective assistance of counsel for failure to call a witness, one of which is that the witness would have been available to testify at trial.  (DE 9-1 at 104).  The postconviction court found that Mr. Jackson failed to appear at trial and that Petitioner failed to allege that Mr. Jackson was available to testify as a defense witness at trial.  Thus, the court found that Petitioner's claim failed as a matter of law.  *Id.* at 134-35.  Nothing in the record demonstrates that the postconviction court's finding in this regard was objectively unreasonable in order to warrant Petitioner's request for relief.

Furthermore, Respondent correctly observes that Mr. Jackson's testimony would have been cumulative.  At trial, defense counsel established that the undercover police officer was close enough "that everyone . . . could hear [him] speak."  (DE 10-1 at 262:16-25).  Mr. Jackson's testimony was, therefore, unnecessary to show that Co-Defendant acted independently from anything said by Petitioner.  Because the information that Petitioner alleges Mr. Jackson would have established before the jury was established by Petitioner's counsel at trial, Mr. Jackson's testimony as to this fact is unlikely to have had any impact on the outcome of the trial.  Thus, even assuming that counsel was deficient for not interviewing and calling Mr. Jackson as a witness,

Petitioner cannot show prejudice as a result.  Accordingly, for all of the reasons stated above, Claim 4 fails.

### B.  Evidentiary Hearing

"[I]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Here, Petitioner requests an evidentiary hearing, in the alternative, for claims one, two and four.  (DE 3 at 15, 18, 24-25).

Petitioner has the burden to establish the need for an evidentiary hearing.  *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011).  "[T]he district court need not conduct an evidentiary hearing if the record refutes the petitioner's factual allegations, otherwise prevents habeas relief, or conclusively demonstrates that the petitioner was not denied effective assistance of counsel."  *Martinez v. Sec'y, Fla. Dep't of Corr.*, 684 F. App'x 915, 926 (11th Cir. 2017) (citing *Schriro*, 550 U.S. at 474).  A Petitioner's conclusory allegations fail to demonstrate that an evidentiary hearing is warranted.  *Chavez*, 647 F.3d at 1061.

Furthermore, the deferential standards of habeas review under § 2254 apply in determining whether an evidentiary hearing is appropriate.  *Schriro*, 550 U.S. at 474 ("If district courts were required to allow federal habeas applicants to develop even the most insubstantial factual allegations in evidentiary hearings, district courts would be forced to reopen factual disputes that were conclusively resolved in the state courts.").  Thus, "before a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the

part of the state court, based solely on the state court record." *Landers v. Warden*, Atty. Gen. of Ala., 776 F.3d 1288, 1295 (11th Cir. 2015).

Here, Petitioner fails to carry his burden.  Specifically, Petitioner fails to demonstrate the existence of any basis to warrant a federal evidentiary hearing.  Rather, Petitioner's claims are all resolvable based upon the state court record without the need to develop the record further. Therefore, I find that an evidentiary hearing is unnecessary and decline to hold one.

### C.  Certificate of Appealability

A habeas petitioner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal and must obtain a certificate of appealability to do so. *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009). The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when a district court has rejected a petitioner's claims on a procedural basis, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

Upon consideration of the record, the Court should deny a certificate of appealability, because reasonable jurists would not find the assessment of the claims debatable or wrong. Notwithstanding, if Petitioner does not agree, Petitioner may bring this argument to the attention of the District Judge in objections to this Report.

V.     **CONCLUSION**

For the foregoing reasons, I respectfully **RECOMMEND** that the Petition for Writ of Habeas Corpus (DE 1: DE 3) be **DENIED** and that no certificate of appealability be issued.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz II, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida on this 26th day of January, 2021.

Jared M. Strauss
**United States Magistrate Judge**

Copies furnished via CM/ECF to:

Hon. Rodolfo A. Ruiz II
United States District Judge

Counsel of record